**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6499
E-mail: jpafiti@pomlaw.com
*- additional counsel on signature page -*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN DOYEL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>OSI SYSTEMS, INC., DEEPAK CHOPRA, ALAN I. EDRICK, and AJAY MEHRA,<br><br>Defendants | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Ryan Doyel ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents,

1

conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding OSI Systems, Inc. ("OSI" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired the securities of OSI between August 16, 2013 and December 5, 2017, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2.      OSI Systems, Inc. produces medical monitoring and anesthesia systems, optoelectronic devices, and security and inspection systems.  Its subsidiary Rapiscan Systems ("Rapiscan") provides metal detectors and X-ray machines for screening luggage and cargo.

2

3.      Founded in 1987, the Company is headquartered in Hawthorne, California. The Company's common stock trades on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol "OSIS."

4.      On January 18, 2012, OSI announced that Rapiscan had been awarded a six-year, $400 million contract to provide turnkey screening services to Mexico's tax collection authority, Servicio de Administración Tributaria ("SAT") (the "Mexico Turnkey Contract").

5.      On August 21, 2013, OSI announced that Rapiscan had been awarded a fifteen-year contract to provide turnkey screening services throughout Albania, stating that "[t]he Company currently anticipates that total gross revenues may range from $150 million - $250 million over the term of the agreement."

6.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the pricing for the Mexico Turnkey Contract was premised on misrepresentations by the Company to SAT regarding the capabilities of Rapiscan's equipment, and was accordingly overpriced relative to the value of the services provided to SAT; (ii) consequently, the Mexico Turnkey Contract was unlikely to be renewed or was likely to be renewed at terms less favorable to OSI; (iii) the Company's revenues from the Mexico Turnkey Contract were therefore unsustainable; (iv) OSI had secured

the Albania Turnkey Contract by corrupt means; (v) the Company's revenues from the Albania Turnkey Contract were thus likewise unsustainable; (vi) OSI suffered from systemic, Company-wide problems with respect to legal and regulatory compliance; and (vii) as a result, OSI's public statements were materially false and misleading at all relevant times.

7.    On December 6, 2017, *Muddy Waters Research* published a report entitled "OSIS: Rotten to the Core" (the "*Muddy Waters* Report").  Citing a number of sources—including Albanian media reports, government documents, corporate filings, statements from former OSI employees, and statements from a former SAT official—the 19-page *Muddy Waters* Report asserted, *inter alia*, that: (i) OSI had secured the Albania Turnkey Contract by corrupt means; (ii) OSI had misled the SAT with respect to the capabilities of the Company's machines and thus secured a "greatly inflated" price for the Mexico Turnkey Contract; and (iii) a culture of non-compliance with applicable laws and regulations was endemic at OSI, with "[f]ormer employees paint[ing] a reasonably consistent picture of a company operating with disregard for the law."

8.    On this news, OSI's share price fell $24.55, or 29.2%, to close at $59.52 on December 6, 2017.

9.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

4

**JURISDICTION AND VENUE**

10.    The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

11.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

12.    Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b).  OSI's principal executive offices are located within this Judicial District.

13.    In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

14.    Plaintiff, as set forth in the accompanying Certification, purchased common shares of OSI at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

15.     Defendant OSI is incorporated in Delaware, and the Company's principal executive offices are located at 12525 Chadron Avenue, Hawthorne, California 90250. OSI's common stock trades on the NASDAQ under the ticker symbol "OSIS."

16.     Defendant Deepak Chopra ("Chopra") has served at all relevant times as the Company's Chief Executive Officer ("CEO"), President and Chairman.

17.     Defendant Alan I. Edrick ("Edrick") has served at all relevant times as the Company's Chief Financial Officer ("CFO") and Executive Vice President.

18.     Defendant Ajay Mehra has served at all relevant times as the President of Rapiscan, a subsidiary of OSI.

19.     The Defendants referenced above in ¶¶ 16-18 are sometimes referred to herein collectively as the "Individual Defendants."

20.     The Individual Defendants possessed the power and authority to control the contents of OSI's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and

misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

21.    OSI produces medical monitoring and anesthesia systems, optoelectronic devices, and security and inspection systems.  Its subsidiary Rapiscan provides metal detectors and X-ray machines for screening luggage and cargo.

22.    On January 18, 2012, OSI issued a press release entitled "OSI Systems Receives Six-Year Agreement For Approximately $400 Million To Provide Turnkey Screening Services To Mexico's Tax Collection Authority."  The press release stated, in part:

> OSI Systems' CEO, Deepak Chopra, stated, "The combination of the magnitude, scope, and duration of the SAT award is unprecedented not only for us but for the entire security industry. SAT's decision to select Rapiscan Systems reaffirms the value of our strategy to expand our security offering beyond the manufacture and sale of screening and detection equipment by providing comprehensive turnkey screening services to our global customer base. This unique service model will result in significant recurring revenue for OSI Systems for the duration of the program."

> Under the program, Rapiscan Systems will provide complete operations of a comprehensive x-ray screening program, which will incorporate technology, staffing, systems integration, and maintenance support at sites networked throughout Mexico, including ports of entry as well as inland checkpoints and airports. These operational capabilities will significantly enhance the Mexican government authorities' capability to interdict contraband and undeclared materials.

## **Materially False and Misleading Statements Issued During the Class Period**

23.     The Class Period begins on August 16, 2013, when OSI filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended June 30, 2013 (the "2013 10-K"). For the fiscal year, OSI reported net income of $44.14 million, or $2.15 per diluted share, on revenue of $802.05 million, compared to net income of $45.55 million, or $2.24 per diluted share, on revenue of $792.99 million for the prior fiscal year.

24.     In the 2013 10-K, OSI stated, in part:

> Major projects recently installed or currently underway include installations at airports, ports and border crossings, government and military facilities and other locations in the United States and throughout the world. These projects contain various inspection product offerings. We anticipate that there may be growing demand from governments and commercial enterprises for increasingly sophisticated, turnkey, security screening solutions. For example, in fiscal 2012, we were awarded significant contracts to provide complete turnkey inspection products and services to Mexico's tax and customs authority as well as to provide security and inspection products to the U.S. Army.

25.     In the 2013 10-K, OSI also advised investors that the Company's Code of Ethics and Conduct . . . applies to all Directors and employees, including our principal executive officer, principal financial officer and principal accounting officer", and represented that the Code of Ethics and Conduct was available on the Company's website.

26.     The 2013 10-K contained signed certifications pursuant to the Sarbanes Oxley Act of 2002 ("SOX") by Defendants Chopra and Edrick, stating that "[t]he

information contained in the [2013 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company at the dates for the periods represented in the [2013 10-K]."

27.   On August 21, 2013, OSI issued a press release entitled "OSI Systems Receives Fifteen-Year Agreement To Provide Turnkey Screening Services In Albania." The press release stated, in part:

> HAWTHORNE, Calif.--(BUSINESS WIRE)-- OSI Systems, Inc. (NASDAQ: OSIS), a vertically-integrated provider of specialized electronics and services, today announced that the Government of Albania has awarded its Security Division, Rapiscan Systems, a fifteen-year contract to provide turnkey cargo and vehicle security screening services at various sites throughout the country.
>
> OSI Systems' CEO, Deepak Chopra, stated, "This significant award from Albania to provide turnkey screening services builds upon similar long-term agreements awarded by the Puerto Rico ports authority and Mexico's tax and customs authority. Our strategy of expanding our security offerings beyond the manufacture and sale of screening and detection equipment by providing comprehensive turnkey screening services continues to be well received in the marketplace. Our experience and capability to develop and integrate leading edge inspection technologies coupled with our depth of operational expertise is unmatched in the industry and we believe makes us uniquely qualified to secure and manage such complex programs."
>
> Under the program, Rapiscan Systems intends to provide a comprehensive X-ray screening program, which will incorporate technology, staffing, systems integration, and maintenance support at sites throughout Albania. These operational capabilities are intended to enhance the Albanian government's capability to interdict contraband and undeclared materials. The Company currently anticipates that total gross revenues may range from $150 million - $250 million over the term of the agreement. Actual revenues could differ significantly from the range provided as the generation of revenue is based upon the volume of cargo and other factors.

Ajay Mehra, President of Rapiscan Systems, stated, "The Albanian government's initiative to secure its ports and land crossings represents another significant step in the security inspection arena. We are proud to have been selected to execute this critical program. Our selection reinforces the attractiveness and compelling value of our turnkey service model."

28.    On August 27, 2014, OSI filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended June 30, 2014 (the "2014 10-K").   For the fiscal year, OSI reported net income of $47.89 million, or $2.33 per diluted share, on revenue of $906.74 million, compared to net income of $44.14 million, or $2.15 per diluted share, on revenue of $802.05 million for the prior fiscal year.

29.    In the 2014 10-K, OSI stated, in part:

The loss or termination of a contract by such an institution, even if for reasons unrelated to the quality of our products or services, could therefore have a more wide-spread and potentially material adverse effect on our business, financial condition and results of operations. For example, in August 2013, we announced a 15-year contract award from the Government of Albania to provide turnkey cargo and vehicle screening services at various sites throughout the country. We were recently notified that the Government of Albania has halted further progress on the contract. We have begun proceedings to protect our legal rights.

***

Revenues for the Security division for fiscal 2014 increased $68.2 million, or 18%, to $440.4 million, from $372.2 million for fiscal 2013. *The increase was primarily attributable to a $52.0 million increase in revenue from our turnkey screening services in Mexico as the program ramped up in fiscal 2014*, and due to growth in the sales of cargo equipment, which increased $33.5 million, including the partial fulfillment of a large Foreign Military Sale to the U. S. Department of Defense.

30.     In the 2014 10-K, OSI also advised investors that the Company's Code of Ethics and Conduct . . . applies to all Directors and employees, including our principal executive officer, principal financial officer and principal accounting officer", and represented that the Code of Ethics and Conduct was available on the Company's website.

31.     The 2014 10-K contained signed certifictions pursuant to SOX by Defendants Chopra and Edrick, stating that "[t]he information contained in the [2014 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company at the dates for the periods represented in the [2014 10-K]."

32.     On August 24, 2015, OSI filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended June 30, 2015 (the "2015 10-K").  For the fiscal year, OSI reported net income of $65.15 million, or $3.17 per diluted share, on revenue of $958.2 million, compared to net income of $47.89 million, or $2.33 per diluted share, on revenue of $906.74 million for the prior fiscal year.

33.     In the 2015 10-K, OSI reiterated , in part:

**Cash Provided by Operating Activities**

**Fiscal 2015 Compared with Fiscal 2014.**  Cash generated by operating activities in fiscal 2015 was $105.1 million, a decrease of $24.1 million, or 19%, from fiscal 2014. This decrease was primarily due to changes in working capital in the current-year period when compared to the prior-year period, including: (i) an $18.8 million decrease in the change in cash flow from accounts receivables due partially to the impact of substantial efforts to

improve our days sales outstanding in fiscal 2014 and collecting delinquent receivables from our turnkey program in Mexico in fiscal 2014; (ii) a $52.8 million decrease in the change in cash flow from deferred revenue as a result of earning revenue related to the turnkey program in Mexico and for other services and product installations that were previously paid for by customers; and (iii) a $12.6 million decrease in the change in prepaid expenses and other assets.

34.     In the 2015 10-K, OSI also advised investors that the Company's Code of Ethics and Conduct . . . applies to all Directors and employees, including our principal executive officer, principal financial officer and principal accounting officer", and represented that the Code of Ethics and Conduct was available on the Company's website.

35.     The 2015 10-K contained signed certifications pursuant to SOX by Defendants Chopra and Edrick, stating that "[t]he information contained in the [2015 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company at the dates for the periods represented in the [2015 10-K]."

36.     On August 19, 2016, OSI filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended June 30, 2016 (the "2016 10-K").  For the fiscal year, OSI reported net income of $26.16 million, or $1.30 per diluted share, on revenue of $829.66 million, compared to net income of $65.15 million, or $3.17 per diluted share, on revenue of $958.2 million for the prior fiscal year.

37.     In the 2016 10-K, OSI stated, in part:

**Fiscal 2016 Compared with Fiscal 2015.**    Revenues for the Security division decreased 15% primarily as a result of a $66.4 million reduction in revenues associated with a Foreign Military Sale contract with the U.S. Department of Defense ("FMS Contract") as compared to the prior year. The delivery of equipment under the FMS Contract was completed in fiscal 2015, and revenues during the remainder of the contract, which expires in fiscal 2017, are not expected to be significant. ***This decrease was partially offset by revenues from the commencement of our turnkey scanning operation in Albania during the year.***

(Emphasis added.)

38.    In the 2016 10-K, OSI also advised investors that the Company's Code of Ethics and Conduct . . . applies to all Directors and employees, including our principal executive officer, principal financial officer and principal accounting officer", and represented that the Code of Ethics and Conduct was available on the Company's website.

39.    The Code of Ethics and Conduct posted on the Company's website at the time of the filing of this complaint purports to have been revised in May 2016.  The Code of Ethics and Conduct states, in part:

**Integrity**
- We are honest and ethical.
- We address issues openly and directly.
- We demonstrate respect for our colleagues and customers.

\*\*\*

**Compliance with Laws, Rules, and Regulations**
Obeying the law is part of the foundation on which our ethical standards are built.  You have an obligation to comply with every applicable local, regional, or national law or regulation in those jurisdictions in which we have a presence and operate our business.

13

\*\*\*

As an employee of OSI, you are expected to understand and comply with all laws, regulations, and company policies that apply to your job position.

\*\*\*

**Anti-Corruption & Anti-Bribery**
We are firmly committed to complying with international anti-corruption and anti-bribery laws including the U.S. Foreign Corrupt Practices Act (FCPA) and the U.K. Bribery Act. OSI's Anti-Corruption Compliance (ACC) Policy strictly prohibits making, offering, promising, or authorizing a corrupt payment of money, or anything of value, to a government official or any other person in order to obtain or retain business, or to direct business, or to achieve any business-related objective. You are also prohibited from receiving a corrupt payment of money, or anything of value, in connection with your employment with our company.

40.    The 2016 10-K contained signed certifications pursuant to SOX by Defendants Chopra and Edrick, stating that "[t]he information contained in the [2016 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company at the dates for the periods represented in the [2016 10-K]."

41.    On September 7, 2017, OSI filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended June 30, 2017 (the "2017 10-K"). For the fiscal year, OSI reported net income of $21.08 million, or $1.07 per diluted share, on revenue of $960.95 million, compared to net income of $26.16 million, or $1.30 per diluted share, on revenue of $829.66 million for the prior fiscal year.

42.    In the 2017 10-K, OSI stated, in part:

14

***Mexico SAT Contract.***    Our contract with the Mexican government to provide a turnkey security screening solution at various locations throughout the country is scheduled to expire in January 2018. Revenue attributable to this contract comprised approximately 12% of our total revenue for the fiscal year ended June 30, 2017. The termination, non-renewal or reduction in scope of this contract, or the renewal of this contract with reduced scope or on other modified terms, even if for reasons unrelated to the quality of our products or services, could have a material adverse effect on our business, financial condition and results of operations, including, but not limited to, impairment of capital assets purchased or manufactured specifically for this contract.

***

**Fiscal 2017 Compared with Fiscal 2016.**    Revenues for the Security division increased primarily as a result of increased sales of cargo and vehicle inspection systems, including related service, primarily driven by $94.0 million of revenue related to AS&E®, which was acquired in September 2016, a significant increase in sales of our RTT® hold baggage product to international customers; and ***increased revenue from turnkey scanning operations as a result of a full year of operations in our Albanian program***, which commenced in the second quarter of fiscal 2016, and our expanded operations within our Mexican program, which added several sites in the fourth quarter of the current year.

(Emphasis added.)

43.    In the 2017 10-K, OSI also advised investors that the Company's Code of Ethics and Conduct . . . applies to all Directors and employees, including our principal executive officer, principal financial officer and principal accounting officer", and represented that the Code of Ethics and Conduct was available on the Company's website.

15

44.    The Code of Ethics and Conduct posted on the Company's website at the time of the filing of this complaint purports to have been revised in May 2016.  The Code of Ethics and Conduct contains the statements quoted *supra* at ¶ 39.

45.    The 2017 10-K contained signed certifications pursuant to SOX by Defendants Chopra and Edrick, stating that "[t]he information contained in the [2017 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company at the dates for the periods represented in the [2017 10-K]."

46.    The statements referenced in ¶¶ 23-45 above were materially false and/or misleading because they misrepresented and/or failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the pricing for the Mexico Turnkey Contract was premised on misrepresentations by the Company to SAT regarding the capabilities of Rapiscan's equipment, and was accordingly overpriced relative to the value of the services provided to SAT; (ii) consequently, the Mexico Turnkey Contract was unlikely to be renewed or was likely to be renewed at terms less favorable to OSI; (iii) the Company's revenues from the Mexico Turnkey Contract were therefore unsustainable; (iv) OSI had secured the Albania Turnkey Contract by corrupt means; (v) the Company's revenues from the Albania Turnkey Contract were thus likewise unsustainable; (vi) OSI suffered from systemic problems with respect to legal

16

and regulatory compliance; and (vii) as a result, OSI's public statements were materially false and misleading at all relevant times.

## **The Truth Begins to Emerge**

47.     On *Muddy Waters Research* published a report entitled "OSIS: Rotten to the Core".   Citing a number of sources—including Albanian media reports, government documents, corporate filings, statements from former OSI employees, and statements from a former SAT official—the 19-page *Muddy Waters* Report asserted, *inter alia*, that: (i) OSI had secured the Albania Turnkey Contract by corrupt means; (ii) OSI had misled the SAT with respect to the capabilities of the Company's machines and thus secured a "greatly inflated" price for the Mexico Turnkey Contract; and (iii) a culture of non-compliance with applicable laws and regulations was endemic at OSI.

48.     With respect to the Albania Turnkey Contract, the *Muddy Waters* Report stated that "corruption in the 2013 [contract] award . . . is more obvious than a three-liter bottle of shampoo in your carryon luggage," and described an "unannounced transfer of [OSI's] project company, S2 Albania SHPK, to a holding company owned by an Albanian doctor, for consideration of less than $5.00."  The reported also stated that "[i]t appears to us that [OSI's] accounts do not reflect the transfer."

49.     With respect to the Mexico Turnkey Contract, the *Muddy Waters* Report stated that "[t]he original contract . . . appears to have been substantially overpriced and oversold in terms of capabilities."  The report quoted a former SAT official as stating, in

part, that "[t]hey [OSI] were selling something that this equipment can't do," and that the Company's promises as to the equipment at issue constituted "a lie."

50.　Finally, with respect to "the extent of rot at the company," the *Muddy Waters* Report cited conversations with former employees, who described, among other issues: (i) an overseas Rapiscan distributor who was assumed to have ties to organized crime; (ii) Rapiscan's practice of "shipp[ing] machines out regardless of whether they were finished or not in order to meet monthly sales quotas,"; and (iii) that the Company "had narrowly avoided being debarred from doing business with the U.S. government."

51.　The *Muddy Waters* Report summarized its findings as follows:

It is ironic that a company integral to enforcing the most tick-tack of rules at security checkpoints seems to pay so little heed to the rules (ahem…laws) governing its conduct of business. We believe the Albania contract resulted from a massive bribe of half the concession value. We believe OSIS's accounts are misstated as a result of this apparent bribe. Mexico looks to be egregiously priced, which certainly raises questions. Former employees painted a reasonably consistent picture of a company operating with disregard for the law.

52.　On this news, OSI's share price fell $24.55, or 29.2%, to close at $59.52 on December 6, 2017.

53.　As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

18

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired OSI common shares traded on the NASDAQ during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

55.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, OSI common shares were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by OSI or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

56.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

57.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

58.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of OSI;

- whether Defendants caused OSI to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of OSI securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

59.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of

the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

60.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- OSI common shares are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's common shares; and

- Plaintiff and members of the Class purchased and/or sold OSI common shares between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

61.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

62.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants

omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

63.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

64.     This Count is asserted against OSI and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

65.     During the Class Period, OSI and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

66.     OSI and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of OSI common shares during the Class Period.

67. OSI and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of OSI were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of OSI, their control over, and/or receipt and/or modification of OSI allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning OSI, participated in the fraudulent scheme alleged herein.

68. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other OSI personnel to members of the investing public, including Plaintiff and the Class.

69.     As a result of the foregoing, the market price of OSI common shares was artificially inflated during the Class Period.  In ignorance of the falsity of OSI's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of OSI common shares during the Class Period in purchasing OSI common shares at prices that were artificially inflated as a result of OSI's and the Individual Defendants' false and misleading statements.

70.     Had Plaintiff and the other members of the Class been aware that the market price of OSI common shares had been artificially and falsely inflated by OSI's and the Individual Defendants' misleading statements and by the material adverse information which OSI's and the Individual Defendants did not disclose, they would not have purchased OSI's common shares at the artificially inflated prices that they did, or at all.

71.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

72.     By reason of the foregoing, OSI and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of OSI common shares during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### <u>Against The Individual Defendants</u>

73.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

74.    During the Class Period, the Individual Defendants participated in the operation and management of OSI, and conducted and participated, directly and indirectly, in the conduct of OSI's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's inadequate internal safeguards in data security protocols.

75.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to OSI's financial condition and results of operations, and to correct promptly any public statements issued by OSI which had become materially false or misleading.

76.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which OSI disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause OSI to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of OSI within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the

unlawful conduct alleged which artificially inflated the market price of OSI common shares.

77.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by OSI.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post- judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: December 8, 2017

Respectfully submitted,
**POMERANTZ LLP**

By: */s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)

468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6499
E-mail: jpafiti@pomlaw.com

**POMERANTZ, LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:(212) 661-8665
E-mail: jalieberman@pomlaw.com
E-mail: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484
peretz@bgandg.com

*Attorneys for Plaintiff*

27

Submission Date

2017-12-07 12:27:33

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.    I  make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against against a Complaint against OSI Systems, Inc. ("OSI" or the "Company"), as well as media and analyst reports about the Company. Plaintiff believes and authorizes the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire OSI securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired OSI securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in OSI securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury that the foregoing is true and correct.

## Name

Print Name

ryan doyel

## Acquisitions

Configurable list (if none enter none)

| Date Acquired | Number of Shares Acquired | Price per Share Acquired |
| --- | --- | --- |
| 10/6/17 | 40 | 92.63 |
| 10/11/17 | 20 | 95.28 |

## Sales

## Documents & Message

Upload your brokerage statements showing your individual purchase and sale orders.

(redacted)

Signature

Full Name

Ryan Doyel

**OSI SYSTEMS, INC (OSIS)**                                                    **Doyel, Ryan**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES/UNITS | PRICE PER SHARES/UNITS |
|------|------------------|------------------------|------------------------|
| 10/4/2017 | Purchase | 40 | $92.6300 |
| 10/11/2017 | Purchase | 20 | $95.2800 |